IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TODD ALLEN SIMMONS,

                Petitioner,

vs.

JOE LIZARRAGA, Warden, Mule Creek
State Prison,[1]

                Respondent.

No. 2:14-cv-00601-JKS

MEMORANDUM DECISION

Todd Allen Simmons, a California state prisoner proceeding *pro se*, filed a Petition for a

Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Simmons is in the custody

of the California Department of Corrections and Rehabilitation and incarcerated at Mule Creek

State Prison. Respondent has answered, and Simmons has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On January 13, 2010, Simmons was charged by consolidated information with four

counts of committing a lewd or lascivious act on a minor under the age of 14 years (Counts 1, 4-

6); forcible sexual penetration (Count 2); forcible oral copulation (Count 3); and exhibiting

harmful matter to a minor for purposes of seduction (Count 7). Counts 1-3 involved crimes

committed in 1988 against D.C., his then-girlfriend's 6-year-old niece. Count 4 was committed

between 1997 and 1998 against S.D., his then-girlfriend's 10- or 11-year old daughter. Counts

5-7 involved crimes committed in between 1999 and 2000 against D.R., his then-girlfriend's 6-

year-old son. The information further alleged that Counts 1-6 involved multiple victims within

---

[1]      The Clerk of Court is respectfully directed to correct the spelling of Respondent's
name to "Joe Lizarraga."

the meaning of the One Strike Law[2] and that Counts 5 and 6 involved substantial sexual conduct.

On September 8, 2010, Simmons proceeded to a jury trial. On direct appeal of his conviction, the California Court of Appeal recounted the following facts underlying the charges against Simmons and the evidence presented at trial:

*Sexual Abuse of D.C. (Counts 1 through 3 )*

In January 1988, D.C. was six years old and periodically stayed the night at her grandmother's house in Palo Cedro, a small town east of Redding. The house had three bedrooms, one occupied by D.C.'s grandmother, another occupied by her aunt, Shirley, and a guest bedroom. D.C. stayed in the guest bedroom, as did several cousins who were also staying at the house. [Simmons], 20 years old at the time, worked for D.C.'s father and was dating Shirley. He routinely stayed the night at the house.

One night, [Simmons] came into the guest bedroom while D.C. was sleeping, pulled back the covers, and crawled into bed with her. D.C. was wearing a shirt and underwear. At first, she thought [Simmons] "just needed a place to sleep, like for whatever reason he couldn't sleep in the living room." [Simmons] then started rubbing her legs with his hands, pushed up her shirt, and pulled down her underwear. [Simmons] told D.C. "how soft [her] skin was." He then positioned his upper body on top of D.C., started rubbing the inside of her legs with his hands, and penetrated her vagina with his fingers. [Simmons] then "put his mouth on [D.C.'s] vagina[l area]" and told her that "he wanted [her] to do the same for him." D.C., who had been quiet up to this point, "told him no and tried to get out from under him." [Simmons] told her to "be quiet" and not to "tell anybody about what happened because he would hurt [her] parents." [Simmons] then got out of bed, retrieved a towel from the bathroom, and cleaned up something on the bed. D.C. put her underwear on and went back to sleep.

That same month, D.C.'s mother, Terri C., became ill and was hospitalized for seven days.[FN1] The day Terri C. was released from the hospital, D.C. told her mother that [Simmons] pulled her underwear down and touched her while she was staying at her grandmother's house. When Terri C. told her husband about D.C.'s accusation, he did not believe that [Simmons], one of his "best friends," had molested his daughter and told his wife not to talk to D.C. about the incident. About a year later, Terri C. took D.C. to child protective services for an evaluation and told an acquaintance who worked for the sheriff's department about the incident. However, no official report was made to law enforcement until 2009, after [Simmons] was arrested for the crimes committed against

---

[2]     CAL. PENAL CODE § 667.61(e)(5). "According to California case law, '[t]he one strike law was enacted to ensure serious and dangerous sex offenders would receive lengthy prison sentences . . . .'" *Blakaj v. McEwan*, No. EDCV 11–0768–SVW (DTB), 2013 WL 3811813, at *14 (C.D. Cal. July 16, 2013) (quoting *People v. Palmore*, 94 Cal. Rptr. 2d 784, 788 (Cal. Ct. App. 2000)).

D.R., described below. When Terri C. saw the arrest on the local news, she called the Redding Police Department and reported that [Simmons] had also molested her daughter.

Based on these facts, [Simmons] was convicted of one count of committing a lewd or lascivious act on a minor under the age of 14 years, one count of forcible genital penetration, and one count of forcible oral copulation.

FN1.   In order to safeguard the privacy of the victims in this case, we do not include the last names of their parents. Instead, each parent will be referred to by his or her first name and the first letter of the last name.

### Sexual Abuse of S.D. (Count 4 )

[Simmons] was married to W.D. for four months between 1997 and 1998. He lived with W.D. and her two daughters, S.D. and her older sister, in Shasta Lake City, a small town north of Redding. S.D. turned 11 years old during this time period.

One afternoon during the marriage, while W.D. was at work, [Simmons] was cooking dinner in the kitchen. S.D. "was just running in there and bothering him and just playing around." [Simmons] unexpectedly pulled her pants and underwear down to her ankles. S.D., "thinking that [they] were playing," stepped out of her pants and underwear, ran to the bathroom, locked the door, and got into the shower. [Simmons] followed, unlocked the door, and came into the bathroom. S.D. then got out of the shower, ran back to the kitchen, and jumped up on the counter. [Simmons] again followed. S.D. sat on the counter with her legs hanging over the side. [Simmons] grabbed her knees, pushed them apart, and looked at her vagina. Smiling in a "[p]erverse" way, [Simmons] commented that she was "starting to grow hair."

At this point, S.D. could hear the sound of her mother pulling into the driveway. S.D. went into the living room, found a pair of [Simmons'] boxers, and put them on. When W.D. asked S.D. why she was wearing [Simmons'] boxers, S.D. answered that she put them on after [Simmons] took her pants off. At this point, [Simmons] yelled S.D.'s name in a stern voice, "pretty much telling [her] to be quiet." S.D. stopped talking. A few minutes later, W.D. called S.D. into her bedroom, where S.D. revealed what happened.

Based on these facts, [Simmons] was convicted of one count of committing a lewd or lascivious act on a minor under the age of 14 years.

### Sexual Abuse of D.R. (Counts 5 through 7 )

[Simmons] dated Debbie B. between 1999 and 2000. He lived with Debbie B. and her two sons, D.R. and C.R., in Redding for two or three months during this time period. D.R. was six years old. C.R. was four years old.

One day, while Debbie B. was out of the house, [Simmons] and D.R. were in the living room watching television. [Simmons] asked D.R. to go into his mother's bedroom. D.R. followed [Simmons] into the bedroom and sat on the bed. [Simmons] put on a pornographic movie depicting people having sex on a beach and then joined D.R. on the

bed. [Simmons] told D.R. to take his clothes off, helped him do so, and started touching D.R.'s legs and penis, making the boy feel "[s]cared" and "[w]eird." [Simmons] then started touching his own penis, moved D.R.'s hand over to his penis, and said: "Here, do this." D.R. touched [Simmons'] penis for a few minutes while [Simmons] continued to touch D.R. [Simmons] then put D.R.'s penis in his mouth, asked D.R. if he "liked it," and told D.R. to continue touching him. A short time later, [Simmons] took his mouth off of D.R.'s penis, masturbated himself to ejaculation, and turned off the movie. After telling D.R. not to tell anybody about what happened, [Simmons] allowed D.R. to get dressed and return to the living room to watch television.

D.R. did not tell his mother about this incident for about two years. When he did so, he revealed only that [Simmons] showed him a pornographic movie. He did not tell her more because he "was still scared" and "didn't want to tell anybody about it." Debbie B. took D.R. to the police station to report the incident. At the station, D.R. repeated what he had told his mother. At this point in time, [Simmons] was living in Arkansas. He moved there shortly after he stopped dating Debbie B. and lived there for six years.

A few years after D.R. first told his mother about the incident, he told her more of what [Simmons] had done to him. As Debbie B. explained, D.R. had taken a sexual education class at school and told her that he had a better understanding of what happened. This prompted Debbie B. to take D.R. back to the police station. D.R. told police that, in addition to playing a pornographic movie, [Simmons] also touched D.R. and had D.R. touch him. D.R. did not tell police about the oral copulation. Around this time period, D.R. began to receive counseling and felt better able to discuss everything that happened.

Ultimately, in 2009, D.R. told police the full extent of what [Simmons] had done to him. While at the police station, D.R. made a pretext call to [Simmons] in an effort to elicit admissions concerning the abuse. [Simmons] said that "he didn't remember doing it," but never "said the words, I did not do this." Debbie B. also made a pretext call to [Simmons]. [Simmons] again claimed not to remember abusing D.R., but "[n]ever once did he deny it."

Based on these facts, [Simmons] was convicted of two counts of committing a lewd or lascivious act on a minor under the age of 14 years and one count of exhibiting harmful matter to a minor for purposes of seduction.

*People v. Simmons*, 148 Cal. Rptr. 3d 554, 557-60 (Cal. Ct. App. 2012).

The jury additionally found true the special allegation that Counts 5 and 6 involved substantial sexual conduct and also found true the multiple victim circumstance allegations as to Counts 1-6. The trial court subsequently sentenced Simmons to a determinate imprisonment term of 20 years, calculated as the mid-term of 6 years on Count 1, 2, and 3, plus the 2-year mid-

term on Count 7, to run consecutively to one another. The court further imposed an

indeterminate term of 45 years to life imprisonment, calculated as 15 years to life for Counts 4-6.

Through counsel, Simmons appealed his conviction, arguing that: 1) Counts 4 and 7 were

barred by the statute of limitations as a matter of law; 2) the People presented insufficient

evidence to prove that the crimes alleged in Counts 1-3 were committed before the statute of

limitations expired; 3) the trial court prejudicially erred and violated his constitutional rights by

failing to *sua sponte* instruct the jury to determine whether the crimes alleged in Counts 1-3 were

committed before the statute of limitations expired; 4) trial counsel rendered ineffective

assistance by failing to raise the statute of limitations with respect to Counts 1-3; 5) the trial

court's imposition of full-term consecutive sentences on Counts 1 and 7 was not authorized by

statute; 6) the trial court was not authorized to impose a sentence of 15 years to life on both

Count 5 and Count 6; and 7) the trial court's imposition of consecutive sentences on Counts 4-6

must be vacated because the trial court erroneously believed consecutive terms were required by

statute. Respondent conceded that the trial court was not authorized to impose full-term

consecutive sentences on Counts 1 and 7 and was not authorized to impose a life sentence on

both Count 5 and Count 6, but otherwise opposed the appeal. On September 27, 2012, the Court

of Appeal issued a reasoned, published opinion accepting as correct Respondent's concessions

and reversing Simmons' conviction on Count 7. *Simmons*, 148 Cal. Rptr. 3d at 570. The

appellate court affirmed the remaining convictions but vacated the sentences imposed to correct

the sentencing errors to which Respondent conceded. *Id.* Simmons petitioned for review of his

unsuccessful claims in the California Supreme Court, which was summarily denied on January

30, 2013.

While his appeal was pending, Simmons filed in the superior court a *pro se* petition for habeas relief. In that petition, he argued that: 1) the trial court exceeded its jurisdiction when it imposed 15 year to life imprisonment sentences on both Counts 5 and 6; 2) he was coerced into relinquishing his right to testify and present a defense in his case by the court's erroneous evidentiary rulings; 3) the prosecutor committed misconduct by knowingly eliciting perjury and making factual misrepresentations during closing arguments; and 4) trial counsel rendered ineffective assistance. The superior court denied the petition on the merits in an unpublished, reasoned opinion issued on April 21, 2014. Simmons then raised the same claims in a *pro se* habeas petition filed in the Court of Appeal, which was denied without comment on May 29, 2014.. He further raised the claims in a *pro se* habeas petition filed in the Supreme Court, which was likewise summarily denied on September 10, 2014.

While his state habeas petitions were pending, Simmons timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on March 2, 2014. *See* 28 U.S.C. § 2244(d)(1)(A). Simmons also moved to stay the federal proceedings pending exhaustion of four unexhausted claims, Docket No. 4, which the Court, through a previously-assigned magistrate judge, granted, Docket No. 6. After the state courts denied his petitions, the Court lifted the stay and directed Respondent to answer Simmons' Amended Petition ("Petition," Docket No. 8). Docket No. 9. Briefing is now complete, and the case has been reassigned to the undersigned judge for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Simmons argues that: 1) his trial counsel rendered ineffective assistance by failing to request an instruction on the statute of limitations; 2) the trial

court erred in failing to *sua sponte* instruct the jury on the statute of limitations; 3) the trial court violated the Ex Post Facto Clause by improperly imposing concurrent 15-years-to-life sentences on Counts 5 and 6; 4) his constitutional rights to testify and to present a defense were violated by the trial court's preliminary ruling on the admissibility of certain impeachment evidence; 5) the prosecutor committed misconduct by eliciting perjury and misstating facts during closing argument; and 6) trial counsel was ineffective for a number of other reasons.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it

cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"

*Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

A.    Instructional Error (Ground 2)/Ineffective Assistance of Counsel (Ground 1)

Simmons first argues that his trial counsel was ineffective for failing to request an instruction on the statute of limitations and that the trial court violated his due process rights for

failing to *sua sponte* give the instruction.[3]  Because jury instructions in state trial are typically

matters of state law, federal courts are bound by a state appellate court's determination that a

jury instruction was not warranted under state law.  *See Bradshaw*, 546 U.S. at 76 (2005) (noting

that the Supreme Court has repeatedly held that "a state court's interpretation of state law,

including one announced on direct appeal of the challenged conviction, binds a federal court

sitting in habeas corpus."); *see also Williams v. Calderon*, 52 F.3d 1465, 1480-81 (9th Cir.

1995).  An instructional error, therefore, "does not alone raise a ground cognizable in a federal

habeas proceeding."  *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1986) (citation omitted).

---

[3]  With respect to the crimes involving D.C., the applicable statute of limitations in 1998 was Penal Code § 800, which provides that "prosecution for an offense punishable by imprisonment in the state prison for eight years or more . . . shall be commenced within six years after commission of the offense."  Effective January 1, 1994, the same day the statute of limitations would have expired if Count 1 had been committed on January 1, 1988, the earliest date alleged in the information, subdivision (g) was added to § 803.  *See* CAL. GOV. CODE § 9600; CAL. CONST. art. IV, § 8.  That provision provided that, notwithstanding any other statute of limitations, "a criminal complaint may be filed within one year of the date of a report to a law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section 216, 286, 288, 288a, 288.5, 289, or 289.5." FORMER CAL. PENAL CODE § 803(g) (Stats. 2002, ch. 1059, § 2, pp. 5268-69, effective Sept. 29, 2002; *see* Stats. 1993, ch. 390, § 1, p. 226).

Thus, if the offenses alleged in Counts 1-3 occurred between January 1 and January 31, 1988, as the prosecution alleged, the original 6-year statute of limitations would have expired between January 1 and January 31, 1994, and the statute of limitations would have lawfully been extended just before it expired.  *See People v. Terry*, 26 Cal. Rptr. 3d 71 (Cal. Ct. App. 2005) (explaining that the California Legislature may enact a law like former Penal Code § 803(g) that provides for a supplemental period of prosecution following report by the victim, and that such a law does not violate ex post facto principles "when applied to offenses for which there was no statute of limitations defense on the effective date of the new law").  However, if the conduct occurred before January 1, 1988, the six-year limitation period would have expired before subdivision (g) was added to § 803, and prosecution on those counts would have been time-barred.  *See Stogner v. California*, 539 U.S. 607, 632-33 (2003) (holding that "a law enacted after expiration of a previously applicable limitations period violates the *Ex Post Facto* Clause when it is applied to revive a previously time-barred prosecution").

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990). The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 309 (1985). This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id.* Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson*, 431 U.S. at 155. In those cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates

due process." *See id.* at 156-57; *Estelle*, 502 U.S. at 72.  Moreover, even if the trial court's failure to give the instruction violated due process, habeas relief would still not be available unless the error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *California v. Roy*, 519 U.S. 2, 5 (1996).

As an initial matter, because the state appellate court found Simmons' claim forfeited under California's contemporaneous objection rule, *Simmons*, 148 Cal. Rptr. 3d at 567 , the claim is procedurally defaulted from federal habeas review, *Coleman*, 501 U.S. at 729-30.  The Ninth Circuit has repeatedly recognized and applied the California contemporaneous objection rule in affirming denial of a federal habeas petition on grounds of procedural default where there was a complete failure to object at trial.  *See, e.g.*, *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).  Because the state appellate court held that the claim was thereby forfeited under California's contemporaneous objection rule, the claim may be deemed procedurally defaulted on federal habeas review.

Moreover, Simmons cannot show that the trial court's failure to *sua sponte* instruct the jury on the statute of limitations violates federal due process.  Under California law, a trial court has a duty to instruct *sua sponte* on particular defenses "only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case."  *People v. Barton*, 906 P.2d 531, 535 (Cal. 1995).  Here, Simmons fails to show that he relied on a statute of limitations defense at trial or that there was sufficient evidence at trial to support the *sua sponte* charge of an

instruction on that defense. As the Court of Appeal stated when rejecting Simmons' related ineffective assistance claim:

> Here, the evidence before the jury supports the conclusion that the crimes committed against D.C. occurred on or after January 1, 1988. Specifically, D.C. testified that the crimes took place in the guest room of her grandmother's house while she stayed the night and while her cousins were also staying in the room. Terri C. testified that these cousins stayed at the grandmother's house a lot in January 1988 because one of the cousins was diagnosed with leukemia that month and the grandmother helped care for him. Terri C. was also hospitalized for seven days in January 1988. The day she was released from the hospital, D.C. told her that [Simmons] had touched her while she was staying at her grandmother's house. Moreover, there is no evidence that D.C. and her cousins stayed the night at their grandmother's house at any time other than January 1988. Based on the evidence, we conclude there is no reasonable probability the jury would have found that the crimes involving D.C. occurred before January 1, 1988.

*Simmons*, 148 Cal. Rptr. 3d at 568.

Even if he could show state law error, which does not appear from the record, again, "the fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle*, 502 U.S. at 71-72 (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the state evidentiary rules.")); *Horton v. Mayle*, 408 F.3d 570, 576 (9th Cir. 2005) ("If a state law issue must be decided in order to decide a federal habeas claim, the state's construction of its own law is binding on the federal court."). Likewise, this Court is bound by the state appellate court's determination that the trial court was not required under California law to give a statute of limitations instruction, in the absence of any due process violation. Simmons fails to establish a due process violation here because he may not transform his state instructional error claim into a federal claim by simply asserting a violation of his constitutional rights. *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (a petitioner cannot transform a state-law issue into a federal one by simply asserting a due process violation); *see also Dunckhurst v. Deeds*, 859 F.2d 110,

114 (9th Cir. 1988) (an instructional error "does not alone raise a ground cognizable in a federal habeas corpus proceeding") (citation omitted).

Similarly, Simmons fails to establish that trial counsel was ineffective for failing to request a statute of limitations instruction. Here, the Court of Appeal reasonably concluded that Simmons failed to carry his burden of demonstrating prejudice from counsel's inaction. *Simmons*, 148 Cal. Rptr. 3d at 568; *see Strickland*, 466 U.S. at 697 (courts may consider either the deficient performance or prejudice prong of the test first and need not address both prongs if the defendant fails on one). Again, based on the evidence noted above, "there is no reasonable probability the jury would have found that the crimes involving D.C. occurred before January 1, 1988." Accordingly, Simmons is not entitled to relief on his ineffective assistance claim either. *See Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996) (defense counsel's failure to raise a meritless argument or to take a futile action does not constitute ineffective assistance of counsel).

B.      Sentencing Error (Ground 3)

Simmons next claims that the trial court erred by imposing concurrent 15-year-to-life sentences on Counts 5 and 6. The Superior Court considered and rejected this claim on state habeas review as follows:

> The Court originally imposed consecutive fifteen (15) years to life terms on both Counts 5 and 6 for the acts committed upon D.R. pursuant to the jury finding that the Penal Code section 667.61, subdivision (b) multiple-victim special allegations were true. On appeal, the Third District held that the trial court was not authorized to impose consecutive life sentences on both Count 5 and Count 6 pursuant to Penal Code section 667.61, subdivision (b), because the offenses were committed against a single victim, D.R., on a single occasion. Instead, the trial court was authorized to impose one consecutive term of 15 years to life, rather than two such terms, and the trial court needed to determine which count would be sentenced pursuant to Penal Code section 667.61, subdivision (b). The other count would need to have sentence imposed "as authorized under any other law, including section 667.6, if applicable."

On resentencing, the Court imposed a fifteen (15) years to life term on Count 5 to run consecutive to Count 4, pursuant to the jury finding that the Penal Code section 667.61 subdivision (b) multiple-victim special allegations were true. The Court imposed a fifteen (15) year to life term on Count 6 to run concurrently with Count 5. At the resentencing hearing, both prosecuting counsel and defense counsel agreed that sentencing in this manner satisfied former section 667.61, subdivision (g), which provided: "The term specified in subdivision (a) or (b) shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion. If there are multiple victims during a single occasion, the term specified in subdivision (a) or (b) shall be imposed on the defendant once for each separate victim. Terms for other offenses committed during a single occasion shall be imposed as authorized under any other law, including Section 667.6, if applicable." (Stats.1998, ch. 936 § 9, p. 6876.) As stated by the People, the Court's other option at resentencing was as follows:

> The other interpretation—but at this point in time, I'm not advocating for—would be that a life sentence could be handed down on Count 4 or 5 (sic.) and that the Count that is not life sentence imposed, that the Court could impose a determinate term of the triad; three, six or eight. I'm not asking—I'm asking the Court to run 15 years to life on Count 5 . . . [ ] I think it's just the law would mandate that they run concurrently because it was . . . [ ] [o]ne victim on one occurrence, but two separate acts." Reporter's Transcript, Resentencing Hearing, p. 9, lines 30-35, p. 10, lines 1-9.

> Former Penal Code section 667.61, subdivision (b) mandates an indeterminate sentence of 15 years to life when a defendant is convicted of certain forcible sex offenses committed under specific aggravating circumstances. *People v. Jones* (2001) 25 Cal. 4th 98, 103. For purposes of this provision, sex offenses occur on a single occasion if they are committed in close "temporal and spatial proximity." *Id.* at 104. "For example, where a defendant raped, sodomized and forced his victim to orally copulate him in the backseat of a car over the course of an hour and a half . . . our Supreme Court held that the statute authorized 'a single life sentence, rather than three consecutive life sentences,' because the sequence of sexual assaults was committed 'during an uninterrupted time frame and in a single location.'" *People v. Simmons* (2012) 210 Cal. App. 4th 778, 798 [internal citations omitted]. Here, with respect to Counts 5 and 6, the Court had to sentence with respect to one victim on one occurrence, but two separate acts. The Court used its discretion to run the sentences concurrently, such that the end result was a single 15 years to life sentence on Counts 5 and 6. Hence, a single life sentence was provided on Counts 5 and 6, rather than two consecutive life sentences. (*See id.*) The Court summarily dismisses petitioner's illegal sentence claim.

The constitutional guarantee of due process is fully applicable at sentencing. *See Gardner v. Florida*, 430 U.S. 349, 358 (1977). However, state law sentencing errors are not cognizable on federal habeas review. *See Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir.

1989).  Moreover, as the Ninth Circuit has explained, a petitioner's contention that a state trial court improperly exercised its discretion under state sentencing law generally does not allege any cognizable claim for federal habeas relief.  *See Brown v. Mayle*, 283 F.3d 1019, 1040 (9th Cir. 2002), *vacated on other grounds*, 538 U.S. 901 (2003), remanded to 66 F. App'x 136 (9th Cir. 2003).  Nevertheless, a federal court may vacate a state sentence imposed in violation of due process, for example, if a state trial judge enhanced a sentence based on materially false or unreliable information or based on a conviction infected by constitutional error.  *See  Townsend v. Burke*, 334 U.S. 736, 741 (1948); *United States v. Hanna*, 49 F.3d 572, 577 (9th Cir. 1995); *Walker v. Endell*, 850 F.2d 470, 477 (9th Cir. 1987).

Simmons fails to establish a due process violation here, however, because his challenge is a state-law claim which is beyond the purview of this Court in a federal habeas proceeding. *Swarthout*, 131 S. Ct. at 863; *see also Bell v. Cone*, 543 U.S. 447, 455 (2005).  Further, the state courts' determination that the sentence imposed upon remand did not violate state law is an interpretation of state law that is binding on this court in consideration of the habeas petition. *Estelle*, 502 U.S. at 67-68; *see Walker v. Endell*, 850 F.2d 470, 476 (9th Cir.1987).  Simmons' challenge to the concurrent life sentences on Counts 5 and 6 therefore must fail.

C.      Denial of Right to Testify (Ground 4)

Simmons additionally contends that his constitutional rights to testify and to present a defense were violated by the trial court's preliminary ruling on the admissibility of certain impeachment evidence.  The superior court considered and rejected Simmons' claim on state habeas review as follows:

> Petitioner contends that following jury selection, the People informed the Court they intended to call Deena Miller, who planned to testify that she had sex with petitioner

in Oregon where they both lived at the time. The People explained that petitioner's ex wife told an investigator that Ms. Miller was having sex with petitioner from when she was 15 to 16 years old, and that petitioner was approximately 26 years old at the time. The People argued, "As the Court knows, she was being 15 at the time or 16, also, that that is—whether she's a consensual participant at that point in time is not relevant because she legally cannot consent."

After hearing argument, the Court ruled Ms. Miller's testimony was inadmissible in the case in chief, but would be admitted "if [Simmons] were to get on the stand and was asked questions about 1108-type situations and—gave answers that he's ever had any encounters with any other minors . . ." The Court went on to say that it could not imagine any situation where petitioner testified and the prosecutor would not be allowed to impeach his testimony by having Ms. Miller testify that she was having sex with petitioner but not at an age where she could legally consent. The Court further ruled that if petitioner should present character witnesses, the Court would allow the Miller evidence that petitioner had sex with a minor under the age to legally consent in the past. All of the witnesses on defendant's witness list were character witnesses.

Petitioner claims he had no reason to refute the dialogue between counsel and the Court at the time of trial. The trial court informed him that his sex act with a 16-year-old girl in Oregon "could be prosecuted in Oregon," and that the evidence in this case would be "huge, it's evidence of a non-party case that's very substantial from a long time ago. And it's . . . it's the same conduct that's alleged in this case, it's oral cop[ulation] of a minor, so I think the likelihood of the jury attaching enormous weight and significance to the evidence is virtually certain."

Petitioner now contends his decision to not testify and present witnesses was not made knowingly and intelligently, and that it was made under coercion and threat. He claims counsel and the Court misinformed him of the age of consent in Oregon, and that the age of consent in Oregon is 16, not 18.

California Evidence Code section 1108 provides that when a defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352. For the purpose of the statute, "sexual offense" means a crime under the law of a state or of the United States involving, inter alia, contact, without consent, between any part of the defendant's body and the genitals or anus of another person, or contact, without consent, between the genitals or anus of the defendant and any part of another person's body. (Evid. Code§ 1 108(d).)

Sexual offenses are codified under sections 163.305- 163.479 of the Oregon Revised Statutes ("ORS"). ORS section 163 .315, subdivision 1, states, "A person is considered incapable of consenting to a sexual act if the person is: (a) Under 18 years of age . . ." Subjecting a person incapable of consent by reason of being under 18 years of age to sexual contact is considered sexual abuse in the third degree in the State of Oregon. (ORS§ 163.415.) It is also considered contributing to the sexual delinquency of a minor. (ORS§ 163.435.) Both of these are Class A misdemeanors.

Based on the statutes, the discussion between the Court and counsel regarding age of consent in Oregon was not incorrect. Petitioner concedes that he took this information

into consideration when deciding not to testify and present witnesses. Petitioner's decision to not testify and present witnesses was made knowingly and intelligently, and was not under coercion and threat. The Court summarily dismisses petitioner's violation of constitutional rights claim.

Simmons fares no better on federal habeas review. As an initial matter, because Simmons did not testify at trial, his challenge to the court's ruling is not cognizable on federal habeas review. *See Luce v. United States*, 469 U.S. 38, 48 (1984) (holding that, in order to present an objection to a trial court's ruling that a prior conviction could be admitted, a defendant must actually testify at trial); *Galindo v. Ylst*, 971 F.2d 1427, 1429 (9th Cir. 1992) (per curium) (applying *Luce* in the context of a habeas petition). In his Petition, however, Simmons alleges that his waiver of the right to testify was "coerced," and it is not entirely clear whether such challenge would be cognizable where a petitioner established that the waiver of his right to testify was unknowing.[4] In an abundance of caution, the Court will address this claim on the merits.

In any event, Simmons cannot establish entitlement to relief. California Evidence Code § 1108 allows the prosecution to prove a defendant's propensity to commit sex crimes by offering evidence that he has committed other sex crimes. It is an exception to the general rule, reflected in § 1101, that propensity evidence is not admissible. *See* CAL. EVID. CODE §§ 1101(a),

---

[4]     As discussed above, however, Simmons is incorrect about the age of consent in Oregon, which, contrary to Simmons' contention, is 18. OR. REV. STAT. § 163.315(1)(a). As the superior court stated on habeas review:

> Based on the statutes, the discussion between the Court and counsel regarding age of consent in Oregon was not incorrect. Petitioner concedes that he took this information into consideration when deciding not to testify and present witnesses. Petitioner's decision to not testify and present witnesses was made knowingly and intelligently, and was not under coercion and threat.

1108(a).  The relevant portion of § 1108 provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."  Section 1108 is analogous to Federal Rule of Evidence 413, which provides that, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault."  FED. R. EVID. 413(a).

To the extent Simmons argues that the trial court under state law, he cannot prevail on such claim because, again, "[i]ncorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected."  *Lincoln v. Sunn*, 807 F.2d 805, 816 (9th Cir. 1987).  So, even if the trial court erred in its application of §§ 352 and 1108, such error is not a ground for federal habeas relief.  *See Estelle*, 502 U.S. at 67-68.  Indeed, Simmons cannot demonstrate that the trial court committed error because, as aforementioned, the age of consent in Oregon is 18, *see* OR. REV. STAT. § 163.315(1)(a), and thus evidence of his relationship was admissible under § 1108.

Moreover, the Ninth Circuit has repeatedly barred federal habeas petitioners from challenging the constitutionality of prior sexual misconduct evidence admitted to show propensity pursuant to California Evidence Code § 1108.  *See, e.g., Greel v. Martel*, 472 F. App'x 503, 504 (9th Cir. 2012) ("Ninth Circuit precedent 'squarely forecloses [the] argument' that admission of evidence of sexual misconduct to show propensity violates due process.") (quoting *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008)); *Sanches v. Hedgpeth*, 381 F. App'x 710, 711 (9th Cir. 2010) ("[T]he Supreme Court has never held that the admission of prior sexual misconduct to lend credence to a victim's claims to be unconstitutional."); *Mejia*, 534

F.3d at 1046 (on AEDPA review, upholding admission of evidence of prior uncharged sexual offenses in support of rape charges). In so holding, the Ninth Circuit has cited the United States Supreme Court's express refusal to decide the issue. *See Estelle*, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.").

In the absence of clearly established Supreme Court law on this issue, AEDPA relief is foreclosed. *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law") (citation, internal brackets and quotations omitted). Because the state courts' rejection of this claim was not contrary to, or an unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court, Simmons' challenge to the preliminary ruling regarding admission of evidence of his prior relationship with a minor must fail.

D.      Prosecutorial Misconduct (Ground 5)

Simmons further argues that the prosecutor committed misconduct at trial by eliciting perjured testimony and then using that false testimony to make factual misrepresentations during closing argument. On state habeas review, the superior court laid out the following facts underlying Simmons' claim:

Petitioner next contends the People knowingly elicited perjured testimony at trial and knowingly made factual misrepresentations during closing arguments.  In particular, petitioner alleges the People elicited testimony from an investigator stating petitioner never denied sexually abusing D.R. and that petitioner's "exact words" were that "It's quite possible [D.R. is telling the truth] and maybe it's something I turned a key off to. I'm ashamed and I don't want to remember having done something like that to someone." Petitioner claims thereafter, during closing arguments, the People used the investigator's testimony to assert petitioner never denied the abuse.  Petitioner cites to the investigators' interview summaries to show petitioner in fact repeatedly denied D.R.'s allegations and never said "It's quite possible [D.R. is telling the truth] and maybe it's something I turned a key off to.  I'm ashamed and I don't want to remember having done something like that to someone."  Petitioner claims the knowing use of false testimony was a miscarriage of justice deserving of habeas relief.

"[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnotes omitted); *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (same result obtains when State, although not soliciting false evidence, allows it to go uncorrected when it appears).  To prevail on a claim of prosecutorial misconduct for use of false witness testimony or evidence, a petitioner must show that (1) the testimony or evidence was actually false, (2) the prosecution knew or should have known that the testimony or evidence was false, and (3) the false testimony or evidence was material.  *Henry v. Ryan*, 720 F.3d 1073, 1084 (9th Cir. 2013); *see also Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (prosecutor's action in presenting false evidence to the jury and by failing to correct the record violated petitioner's rights).

Likewise, to successfully raise a claim cognizable on habeas review based on a prosecutor's comments at trial, a petitioner must demonstrate that the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due

process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Under this standard, only egregious prosecutorial misconduct can give rise to a constitutional claim. *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). A prosecutor's comments in summation constitute grounds for reversal only when the remarks caused actual prejudice. *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004) (applying harmless error test to claim of prosecutorial misconduct in summation).

Although a prosecutor has a duty to refrain from knowingly presenting perjured testimony, *United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002), the record does not support Simmons' contention that the prosecution knowingly introduced perjured testimony. He provides nothing more than his unsupported assertion that the investigator lied. This lack of evidentiary support is fatal to his claim. *Woodford v. Visciotti*, 537 U.S. 19, 15 (2002) (*per curiam*) (holding that state habeas petitioner carries the burden of proof). Simmons claims that the investigator's police report provides the requisite proof, but Respondent noted that the report was not in the record. In an exhibit to his Traverse, Simmons attached the report. Docket No. 24 at 66. However, the report, like her testimony at trial, states that:

> S/SIMMONS said, "Quite possible, maybe it's something I've turned a key off to, I'm ashamed and I don't want to remember having done something like that to someone." S/SIMMONS said he wants to remember and he wants to apologize to the Victim. S/SIMMONS said he thinks it's something that if it happened, he's thinking that's what's going on his head because he's trying to think of anything.

The attached evidence therefore does not support Simmons' claim that the investigator committed perjury. Notably, the investigator's testimony at trial is consistent with her testimony at the preliminary hearing, and the defense did not challenge the veracity of her testimony at either proceeding.

Moreover, the state court's determination that the allegedly-false testimony did not affect the outcome of his case is reasonable. The superior court rejected Simmons' prosecutorial misconduct claim on state habeas review for failure to show prejudice:

> Petitioner has failed to establish that the testimony elicited from the investigator, and the later use of the testimony by the People in closing, was outcome determinative in this case. This case was on for a jury trial that began September 8, 2010 and proceeded to September 17, 2010. In addition to the investigator's testimony, testimony was taken from multiple witnesses, and the defense was permitted to cross-examine all witnesses. The jury had more than enough evidence on which to base its findings absent the investigator's testimony, and reached its verdict on the same day it was sent to deliberation. The Court summarily dismisses petitioner's miscarriage of justice claim.

The state court's determination is both reasonable and fully supported by the record, and the Court concludes that there is no reasonable likelihood that the allegedly false testimony could have affected the judgment of the jury. Simmons is not entitled to relief on his prosecutorial misconduct claim.

E.    Freestanding Ineffective Assistance of Counsel Claims (Ground 6)

Finally, Simmons claims that trial counsel was ineffective with respect to investigation and cross-examination. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas

petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice

standard is applied and federal courts do not engage in a separate analysis applying the *Brecht*

harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin*

*v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective

assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's
> determination" under the *Strickland* standard "was incorrect but whether that
> determination was unreasonable—a substantially higher threshold." And, because the
> *Strickland* standard is a general standard, a state court has even more latitude to
> reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v.*

*Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Simmons must show that defense counsel's representation was not within the range

of competence demanded of attorneys in criminal cases, and there is a reasonable probability

that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,*

474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the

petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See*

*Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not

address both prongs if the defendant fails on one).

Simmons first alleges that trial counsel was ineffective for failing to investigate the age

of consent in Oregon. But because, as discussed above, the age of consent in Oregon is 18, *see*

OR. REV. STAT. § 163.315, Simmons cannot show that he was prejudiced by counsel's alleged

failure to investigate. Simmons also argues that trial counsel was ineffective because he did not

cross-examine the investigator about Simmons' denial of D.C.'s accusations. But as the superior

court reasonably found on state habeas review, Simmons "has not shown how the revelation of his denial of allegations in any investigative setting would have altered the outcome of this case. The self-serving denial does nothing to change the factual evidence brought against petitioner, and the jury would have had the right to weight the denial as they pleased." Simmons' self-serving denial is not persuasive on federal habeas review either. *See Blazer v. Scribner*, No. CV 065329, 2009 WL 1740829, at *23 (C.D. Cal. Jun. 17, 2009) ("[P]etitioner has failed to convince the Court that, but for counsel's failure to introduce evidence of petitioner's own self-serving denial of culpability, petitioner would not have been convicted."). This is particularly true here in light of the overwhelming evidence against Simmons in the form of testimony of 3 victims and their mothers as well as expert testimony explaining the psychology and behaviors of child sexual abuse victims.[5] Simmons fails to show that his trial counsel was ineffective, and he is not entitled to relief on this claim.

## V. CONCLUSION AND ORDER

Simmons is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

---

[5] Other courts have admonished that harmless error review, which is similar to a prejudice determination, should not be confused with the sufficiency of the evidence inquiry required under *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). *See, e.g.*, *Jensen v. Clements*, 800 F.3d 892, 902 (7th Cir. Sept. 8, 2015) ("Time and time again, the Supreme Court has emphasized that a harmless-error inquiry is not the same as a review for whether there was sufficient evidence at trial to support a verdict."). The Court's reliance on the overwhelming evidence against Simmons in finding no prejudice does not simply focus on the sufficiency of the other evidence, but rather properly "look[s] at the influence the improperly admitted [evidence] had on the verdict," in light of a "host of factors," including the overall strength of the prosecution's case. *Id.* at 904 (citations omitted).

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* Fed. R. App. P. 22(b); 9th Cir. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: July 12, 2017.

                                       /s/James K. Singleton, Jr.
                                         JAMES K. SINGLETON, JR.
                                         Senior United States District Judge